Ella L. Mourne, Petitioner-Appellant, v. Lyle E. Tody, Town Clerk et al., Respondents-Appellees.

Gen. No. 10,585.

Opinion filed April 1, 1952. Released for publication April 18, 1952.

C. A. PEDDERSON, of Rockford, for appellant.

McCAULEY & WEIR, of Harvard, for appellees.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

By her amended petition for mandamus, filed on October 4, 1951, appellant, Ella L. Mourne, sought to compel Lyle E. Tody, town clerk of Chemung township, McHenry county, Illinois, to issue to her a certificate of election to the office of assistant supervisor of that township and to direct the supervisor of said Town, Frank E. Beck, and the town assessor, Fred Dean, and said town clerk, Lyle E. Tody, to file a report in accordance with the ballots cast for her for assistant supervisor at the election in said Town held on April 3, 1951. To this petition appellees filed a motion to strike, which was sustained, and from an appropriate final order dismissing the petition plaintiff appeals.

The amended petition set forth that appellant was a resident and elector of Chemung township, McHenry county, Illinois, and had been for many years, and as such was qualified to hold the position of assistant supervisor and was willing to accept the duties and responsibilities of that office; that Chemung township has for more than twenty years had a population in excess of 4,000 inhabitants, and is, therefore, by statute, entitled to one additional supervisor; that on April 3, 1951, a township election was held in that township in which were elected a town clerk, a town assessor, and justices of the peace; that at said election appellant was duly elected to the office of assistant supervisor; that four votes were cast for her as assistant supervisor of said township by writing in her name; that defendants met and made a canvass of the votes cast, and said return showed that she had received four votes for assistant supervisor; that she has never received notice of her election and that appellee Tody, the town clerk, has failed and refused to issue to her a certificate of election.

The petition further alleges that the board of supervisors, prior to the election held on April 3, 1951, did not fix the term of office for the additional assistant supervisors to be elected in the various townships of the county; that there were six additional supervisors elected and that each of them, other than petitioner, were duly notified of their election, certified as provided by law, and are now serving as such assistant supervisors.

Appellees in their motion to strike allege that the amended petition is insufficient in that it fails to allege that the first term of office for an assistant supervisor for Chemung township was ever fixed by the board of supervisors of McHenry county as required by the provisions of paragraphs 60, 60a, and 60b of chapter 139 of the Illinois Revised Statutes [Jones Ill. Stats. Ann.

133.059, 133.060, 133.061] and that the amended petition does not set forth facts sufficient to establish that there was the office of assistant supervisor capable of and legally possible of being filled at the election of April 3, 1951. The motion then concludes that if the county board has never fixed the first term of office, which would be either a two- or four-year term, it is impossible to tell whether the term of office of assistant supervisor had expired so that it could have been filled at the April 3, 1951, township election.

Counsel for appellant insist that the amended petition shows that for many years Chemung township has had a population in excess of 4,000 people and that therefore, under the law, the electors of that township were authorized to choose an assistant supervisor at the election held on April 3, 1951, and that she was duly elected to this office. Her counsel assert that the only issue involved in this case is: "Was it a prerequisite that before appellant could be elected as an assistant supervisor for Chemung Township that the Board of Supervisors of McHenry County first make a classification as provided by paragraphs 60a and 60b of Chapter 139 Ill. Rev. Stat.?"

Counsel for appellees state that the legal proposition which must be determined upon this record is whether it was possible to fill the office of assistant supervisor until it had been determined in the proper manner that a vacancy exists. The only case cited and relied upon by appellees is *People v. Pillman,* 284 Ill. App. 287, and counsel insist that "the opinion in that case covers the entire field of the method, manner and procedure to be followed in filling a township office" and that the principles of law there enunciated are decisive of the issues presented by this record.

The *Pillman* case, *supra,* was a quo warranto proceeding instituted by the State's Attorney of Jasper county calling upon Amos Pillman to show by what

authority he exercised the duties of supervisor of the Town of Smallwood in Jasper county. It appeared from the pleadings in that case that Pillman was elected supervisor of Smallwood township in April 1930, for a term of three years and until his successor should be elected or appointed and qualified; that at the annual town meeting in April 1933, an effort was made to elect his successor, but upon a contest of that election it was held by the county court that no one was elected supervisor, and thereafter Pillman continued to hold the office. It further appeared that at the annual town meeting held in April 1935, candidates for supervisor were then voted on and Ted Zimmerman was declared elected to the office. Thereafter the instant quo warranto proceeding was instituted. Pillman contended that the election of Zimmerman was invalid because the statute did not authorize the election of a supervisor to fill a vacancy except at a special town meeting called for such a purpose, that no special town meeting had been held since his election in 1931 and therefore he was entitled to continue to hold his office until his successor was lawfully elected as provided by law. The court stated that the only question argued by the parties was whether or not a vacancy in the office of supervisor could be filled at an annual town meeting. In the course of its opinion, the court said that inasmuch as the statute provided who had the power to determine whether or not the facts occasioning a vacancy exist and also provided the manner in which vacancies so determined may be filled, that until there was a declaration by the proper statutory body that a vacancy existed, a supervisor elected at an annual town meeting without such previous declaration had no legal tenure to the office. The factual situation in the instant case is different than the factual situation in the *Pillman* case. In the *Pillman* case, Pillman had been elected supervisor for a term of three years and until his successor was

elected and qualified. At the end of his three-year term no one was elected to succeed him. Upon these facts the supervisor, town clerk, and justices of the peace of the town had the power, under the statute, to determine whether a vacancy existed, and what the court held was that until these officers have determined that a vacancy exists there is no authority to fill it. In the instant case we are dealing with a newly created office. There was no vacancy. It had to be filled before it could become vacant within the meaning of that term when applied to this office of assistant supervisor.

*The People v. Opel,* 188 Ill. 194, was an original proceeding in the Supreme Court, filed October 5, 1900, which sought to compel the county clerk of Sangamon county to issue an order appointing a day for the election of a clerk of the probate court of that county. No probate court had existed in Sangamon county prior to the time the petition for mandamus was filed. The contention of the relators was that the census of 1900 showed that the population of the county was in excess of 70,000 and thereby the offices of probate judge and probate clerk were established and that a vacancy was at once created so that immediately upon the official announcement of the census it became the duty of the county clerk to call an election to fill the alleged vacancy in the office of probate clerk. In holding otherwise, the court said that it was not sufficient merely that the county have a requisite population of 70,000 in order to establish a probate court but the time must also arrive for the election of a probate judge and that the Constitution provided that the judge of the probate court should be elected at the same time when the county judge is elected; that the county judge of Sangamon county, under the Constitution and laws passed in pursuance thereof, was first elected at the general election in November 1882, and his successor was elected every four years thereafter; that it follows that

the county judge must have been elected at the general election in 1898 and that his term of office would not expire until December 1902, and no judge of the probate court could be elected until the general election of November 1902; that the statute also provided that the clerk of the probate court should be elected at the same time when the probate judge is elected and, therefore, the clerk of the county court could not be compelled to call an election for the selection of a clerk of the probate court of Sangamon county before the general election to take place in November 1902. The court then referred to section 125 of the Act of 1872 providing for elections, which is identical with section 25-2 of chap. 46, Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 43.1050], and said that no mention was made in this section of a vacancy in an office before the time fixed by law for filling that office; that the expression in section 125 that "every elective office shall become vacant" implies that the office is first to exist because it could not become vacant until it had already existed and that the plain inference is that it is to be filled before it can become vacant within the meaning of that term, so far as it refers to filling the office by special proceeding. The court, in holding that there was no vacancy in the office of probate clerk which could be filled at that time, said: "The statement in section 125, that the events therein referred to are to happen 'before the expiration of the term of such office' in order to create a vacancy, implies that such events are to occur after the beginning of the term of office. Here, there has been no beginning of a term of the office of probate clerk. None of the events specified have occurred; hence there is no vacancy, as contemplated by the law."

 Although the population of Chemung township has for many years exceeded the statutory requirements entitling it to an additional supervisor, this office, under the statute and the authorities, must still be

418

deemed to be a newly created office, as it had never been filled, and having never been filled it cannot be held that a vacancy existed in it, and since there was no vacancy the statutory provisions relied upon by counsel for appellees are not applicable.

Section 1a, paragraph 60a of chapter 139 provides: "The supervisors and assistant supervisors elected at the first annual town meeting in counties which hereafter adopt township organization at the first regular or special meeting of the county boards of such counties, shall be divided into two classes, each to consist of one-half of the members of such board, as nearly as may be. The supervisors and assistant supervisors so classified shall be selected by lot; provided, that the supervisor and assistant supervisors of any town having a representation of two or more members shall be separately selected and classified by lot so as to be divided among the two classes, as near equally as may be. The first class of supervisors and assistant supervisors shall serve until the date of the annual town meeting in the next odd numbered calendar year and the second class shall serve until the date of the annual town meeting in the second odd numbered year and until their respective successors are elected and qualified . . ." Section 1b of paragraph 60b of this same chapter, so far as pertinent here, provides in part: "when any town in any such county becomes entitled to additional representation on the county board, such additional assistant supervisors shall be classified by lot in such manner as to maintain the numerical equality of each of the two classes of supervisors in such county such classification to be made in the manner and for the time provided in Section 1a of this Article for classification in counties which hereafter adopt township organization."

■ ■ The above quoted sections of the statute, when read in connection with section 60 (*supra*), make it clear that it was not the intent of the legislature that

419

the county board of supervisors must first fix the term of office for an assistant supervisor for a township when that township became entitled to additional representation. Rather, it was the legislative intent that the classification of members of the county board was to be made *after* the supervisors and assistant supervisors had been elected. Nowhere in these statutory provisions (sections 60a and 60b, *supra*) is the county board given the authority to fix the terms of office of supervisors and assistant supervisors. These terms are fixed by paragraph 60 wherein the term of office for both the supervisor and the assistant supervisor is fixed at four years, except as provided by section 60a in a case of a county first adopting the township organization plan, which is not the situation here.

It must be remembered that this office of assistant supervisor had never been filled and it was, therefore, proper for the office to be filled at the regular town election held on April 3, 1951. The judgment of the circuit court is reversed and the cause remanded with directions to overrule the motion to strike the amended complaint.

*Reversed and remanded with directions.*